UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIETT A. AMES,<br>        Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, et al.<br>        Defendants. | Civil Action No. 13-629 (ESH-AK) |

**MEMORANDUM OPINION**

United States District Judge Ellen S. Huvelle referred this case to the undersigned for a Determination of Plaintiff's Motion to Compel Deposition Testimony ("Motion") [47]. (*See* Judge Huvelle Order [56]). Plaintiff Harriett A. Ames ("Plaintiff") moves this Court to compel the Defendant United States Department of Homeland Security ("Defendant" or "DHS") to produce Investigating Senior Special Agent Kyong C. Yi ("Agent Yi" or "SSA Yi") to complete his deposition. (*See* Pl.'s Mot.; Pl.'s Mem. [47-1]). Defendant filed an Opposition to Plaintiff's Motion ("Opposition") [62]. Plaintiff filed a Reply to Defendant's Opposition ("Reply") [63]. On September 25, 2015, the undersigned held a Hearing on Plaintiff's Motion. (Sept. 25, 2015 Min. Entry). Upon consideration of the Motion, Opposition, Reply, testimony given at the Hearing, and for the reasons set forth below, Plaintiff's Motion is denied.

**Background**

A.    Plaintiff's Underlying Privacy Complaint

The underlying case stems from a Complaint filed by Plaintiff alleging violations of her rights under the Privacy Act, 5 U.S.C. § 552a. (Compl. [1] at ¶ 1). In October 2008, Plaintiff

1

began working for the Federal Emergency Management Agency ("FEMA") of DHS as a GS-13 personnel security specialist. (Ames Decl. [51-1] at ¶ 1). In September 2009, Plaintiff was selected to be Acting Branch Chief of the Personnel Security Branch, and was subsequently promoted to Branch Chief (GS-14) in October 2010. (*Id.*) As Branch Chief, Plaintiff was responsible for adjudicating and granting high level security clearances. (Ex. 4 [51-17] at 6).

On August 1, 2011, Agent Yi interviewed Plaintiff in conjunction with an active investigation of Plaintiff's supervisor, Burt Thomas, Chief Security Officer of FEMA. (Ex. 3C [51-7] at 2). The investigation of Mr. Thomas determined that he appeared to have engaged in a conflict of interest when he hired Gary Walker and James Bland, the owners of Seven Agents Consulting Group LLC, a FEMA vendor. (Ex. 3 [51-4] at 5). The investigation also determined that Mr. Thomas provided false statements to DHS Office of Inspector General ("OIG") regarding his knowledge of their criminal histories. (*Id.*)

Agent Yi subsequently initiated a separate investigation directed at Plaintiff. (*Id.* at 3; Compl. at ¶ 12). The investigation ultimately determined that Plaintiff provided false information to DHS OIG because she had specific detailed knowledge of Mr. Walker's previous criminal conviction at the time, but denied knowing about it. (Ex. 3 [51-4] at 3). Additionally, the investigation determined that Plaintiff may have provided false information or lacked candor when interviewed by an Office of Personnel Management investigator as part of Mr. Bland's official background investigation for national security clearance. (*Id.*) On May 31, 2012, DHS OIG issued its Report of Investigation ("Report"). (Compl. at ¶ 11).

Before the Report was issued, however, Plaintiff had already resigned from DHS and started working as the Division Chief of Personnel Security (GS-15) for the National Geospatial-Intelligence Agency at the Department of Defense ("NGA"). (Ex. 1 [51-1] at ¶ 1).

On July 13, 2012, Agent Yi contacted NGA, Plaintiff's new employer, and verbally disclosed the contents of the Report. (Yi Dep. Ex. 3 [47-4] at 28). He also mentioned that DHS would provide a copy of the Report upon receipt of a formal request. (Ex. 9 [51-22] at 11). On July 13, 2012, NGA formally requested the Report. (*Id.* at 12). On July 17, 2012, NGA initiated its own investigation into whether Plaintiff made false official statements. (Ex. 5 [51-18] at 2). On August 30, 2012, Agent Yi sent the Report to NGA in a series of four emails. (Ex. 10 [51-23] at 18). NGA subsequently terminated Plaintiff's employment. (NGA Termination Letter, Ex. 4 [47-2] at 1).

      B.     Legal Action and Discovery

On May 2, 2013, Plaintiff filed a Complaint for declaratory and injunctive relief and for damages, based on claims that Agent Yi improperly disclosed information covered by the Privacy Act. (*See* Compl. at ¶ 1). The Privacy Act states that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . ." 5 U.S.C. § 552a(b).

Judge Huvelle initially scheduled discovery to end on March 12, 2014. (Sept. 12, 2013 Scheduling Order [15]). After several consent motions for extensions by the parties, discovery was extended until January 30, 2015. (Nov. 20, 2014 Min. Order). Judge Huvelle granted the parties an extension until February 20, 2015 solely to allow them to complete depositions of Agent Yi and Plaintiff Ames. (Jan. 27, 2015 Min. Order). Judge Huvelle granted an additional extension until March 6, 2015 to allow Plaintiff to depose Agent Yi. (Feb. 24, 2015 Min. Order).

      C.     <u>Agent Yi's February 25, 2015 Deposition Testimony</u>

On February 25, 2015, Plaintiff deposed Agent Yi. (Yi Dep., Ex. 4 [47-4]). During the deposition, Agent Yi described his investigation of Plaintiff and how he contacted and sent the Report to NGA. (*Id.* at 24). Agent Yi also disclosed that he himself was placed on administrative leave for nine months in 2013 because DHS was investigating Agent Yi for an allegation of misconduct. (*Id.* at 20-21). When Plaintiff's counsel asked Agent Yi the nature of the alleged misconduct, Defendant's counsel objected, asserted the law enforcement privilege because the investigation had not concluded, and instructed Agent Yi not to answer any questions related to this matter. (*Id.*) Defense counsel stated that Agent Yi was on paid administrative leave for nine months during the investigation but was ultimately reinstated. (*Id.*) As a consequence of defense counsel's objection, Agent Yi did not respond to any further questions on this matter. (*Id.*)

After the investigation concluded, the parties attempted to resolve the dispute informally before bringing it to the Court's attention, but were ultimately unsuccessful. (Pl.'s Mem. [47-1] at 4).

      D.     <u>Plaintiff's Motion to Compel</u>

On June 25, 2015, Plaintiff filed the instant Motion to Compel Deposition Testimony [47]. Specifically, Plaintiff requests this Court to compel DHS to produce Agent Yi to continue his deposition unfettered by counsel's objection and claim of law enforcement privilege. (Pl.'s Mot. at 2). Plaintiff seeks to continue the deposition of Agent Yi because she believes that Agent Yi's alleged past misconduct of accessing files without authorization will provide relevant evidence of his character, credibility, and his intent to improperly distribute files in the instant case. (*Id.*)

Defendant filed an Opposition [62] on August 20, 2015. Defendant argues that the Motion to Compel should be denied because discovery has already closed, Agent Yi's past investigation has no relevance to Plaintiff's instant Privacy Act claims, and DHS properly invoked the law enforcement privilege. (Def.'s Opp'n at 1). To support these claims, Defendant attached a declaration by John Laferty, Director of the Office of Investigations ("INV") in DHS OIG, which states:

> 4. In October 2013, I and other senior INV managers received an allegation that a number of INV personnel, including SSA Yi, may have accessed certain case files in the INV electronic case file system, known as the Enforcement Data System (EDS), without having official authorization or need to access those files.
>
> 5. An internal investigation of the matter commenced the same month. The investigation included but was not limited to the allegations regarding SSA Yi.
>
> 6. On October 13, 2013, SSA Yi was placed on paid administrative leave pending developments in the investigation. By June 2014, the internal investigation had made sufficient progress that INV management concluded there was no further need for SSA Yi to remain on administrative leave, even though the investigation had not yet concluded.
>
> 7. Accordingly, on June 30, 2014, SSA Yi was recalled from paid administrative leave and returned to normal duty without restriction. He has remained in that status from that time to the present.
>
> 8. The investigative activity with respect to SSA Yi was completed in April 2015, and a final investigative report was prepared in May 2015. The investigation concluded that the allegation against SSA Yi was unsubstantiated and that no disciplinary action against him was warranted.
>
> 9. Due to the nature of my official duties, I am aware of the lawsuit brought by Plaintiff Harriett Ames in the present matter and am generally familiar with her claims. The allegedly unauthorized access that was the subject of the internal investigation discussed above had nothing whatever to do with Harriett Ames, or with SSA Yi's investigation of Ms. Ames or any of his actions regarding her. None of the case files that SSA Yi allegedly accessed without official authorization or need had any relationship whatever to Ms. Ames or to the present lawsuit.
>
> 10. The report and related records of the internal investigation into the allegations against SSA Yi are law enforcement sensitive because they reflect

> details about the technical characteristics of EDS, alleged vulnerabilities of EDS, and numerous witness interviews revealing the identities and alleged activities of law enforcement agents.

(Laferty Decl., Ex. 3 [62] at 138-39).

On September 25, 2015, the undersigned held a Hearing on Plaintiff's Motion to Compel. (Sept. 25, 2015 Min. Entry). Plaintiff's counsel maintained that the misconduct allegation against Agent Yi is relevant because it could provide evidence of his character and intent to unlawfully distribute Privacy Act protected material in this case. (*Id.*) Plaintiff's counsel further argued that he did not have to accept Director Laferty's Declaration; instead, he should be allowed to depose Agent Yi to develop the necessary facts to make an independent determination of whether Agent Yi engaged in misconduct. (*Id.*) Defendant maintained that a further deposition of Agent Yi's alleged misconduct would be irrelevant because the allegation was factually and temporally distinct from the instant action, and the allegation was ultimately unsubstantiated. (*Id.*)

## **Analysis**

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 37, a party may move for an order compelling the completion of a deposition after the moving party has conferred for purposes of resolving the discovery dispute. In cases where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is within the scope of discoverable information under Federal Rule of Civil Procedure 26. *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 30 (D.D.C. 2007) (citing *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000)).

6

Federal Rule of Civil Procedure 26(b)(1) provides in part that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Generally speaking, "[r]elevant information need not be admissible at trial if the discovery appeals reasonably calculated to lead to the discovery of admissible evidence." *Id*. While "the boundaries defining information that is relevant to the subject matter involved in the action are necessarily vague and it is practically impossible to state a general rule by which they can be drawn . . . no one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." *Food Lion, Inc. v. United Food and Commercial Workers Int'l. Union,* 103 F.3d 1007, 1012 (D.C. Cir. 1997) (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2008 (2d ed. 1994)). Relevancy in discovery matters "is not so liberal as to allow a party 'to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Id.* (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)).

Trial courts have considerable discretion when handling discovery matters. *Id.* ("[A] district court's decision to permit or deny discovery is reviewable only for an abuse of discretion"). Pursuant to Federal Rule 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." Fed. R. Civ. P. 26(b)(2)(iii).

B. <u>The Relevance of the Requested Deposition</u>

Plaintiff requests this Court to compel DHS to produce Agent Yi to continue his deposition because she believes inquiry into Agent Yi's alleged misconduct of accessing files

7

without authorization will provide relevant evidence of his character, credibility, and his intent to improperly distribute files in the instant case. ((Pl.'s Mot. at 2; *see also* Pl.'s Mem. at 5) ("Agent Yi's alleged misconduct may lead to other discoverable evidence given the similarity between the facts of his misconduct and the allegations in Ms. Ames' Privacy Act Complaint.")) To the extent that there was ambiguity about the relevancy of Agent Yi's alleged misconduct (hereinafter, "EDS allegation") at the time of filing of the Motion to Compel, the Defendant has since clarified why this information is irrelevant in its Opposition and Director Laferty's Declaration. (Laferty Decl., Ex. 3 [62] at 138-39).

The dissimilarity between Plaintiff's Privacy Act allegation and the EDS allegation against Agent Yi exposes why a further deposition into the EDS allegation is not reasonably calculated to lead to admissible evidence. At bottom, Plaintiff brings the present action against DHS on grounds that Agent Yi violated her rights under the Privacy Act by disclosing the Report to NGA. 5 U.S.C. § 552a(b). In order to obtain monetary damages under the Privacy Act, Plaintiff will have the burden of proving that Agent Yi's disclosure of the Report to NGA was "willful or intentional," meaning he "commit[ed] the act without grounds for believing it to be lawful or by flagrantly disregarding others' rights under the Act."[1] 5 U.S.C. § 552a(g)(4); *Sussman v. U.S. Marshals Service*, 494 F.2d 1105, 1122 (D.C. Cir. 2007). Agent Yi was the lead investigator on Plaintiff's case and was therefore authorized to access files relating to the allegations of Plaintiff's misconduct; that is, there is no argument that Agent Yi improperly accessed Plaintiff Ames' information without authorization. (*See* Pl.'s Mem. at 8).

---

[1] Plaintiff will have to prove four elements: "1) the disclosed information is a 'record' contained within a 'system of records'; 2) the agency improperly disclosed the information; 3) the disclosure was willful or intentional; and 4) the disclosure adversely affected the plaintiff." *Sussman v. U.S. Marshals Service*, 494 F.2d 1105, 1122 (D.C. Cir. 2007). Plaintiff is seeking the deposition testimony only with regard to the third element. (Pl.'s Mem. at 5).

The EDS allegation, in contrast, dealt with an allegation that Agent Yi improperly accessed information from an internal database without authorization. (Laferty Decl., Ex. 3 at 138). As Director Laftery states, "[i]n October 2013, I and other senior INV managers received an allegation that a number of INV personnel, including SSA Yi, may have accessed certain case files in the INV electronic case file system, known as the Enforcement Data System (EDS), without having official authorization or need to access those files." (Laferty Decl., Ex. 3 [62] at 138). There were no allegations that Agent Yi improperly disclosed such information. (*See id.*) Thus, the EDS allegation is not a Privacy Act claim or a potential Privacy Act claim because it only dealt with an allegation of improper access to information, not disclosure of it.

Moreover, the EDS investigation concluded that "the allegation against SSA Yi was unsubstantiated and that no disciplinary action against him was warranted." (*Id.*) Accordingly, Agent Yi "was recalled from paid administrative leave and returned to normal duty without restriction." (*Id.*) Director Laferty further states that the EDS allegation "had nothing whatever to do with Harriett Ames, or with SSA Yi's investigation of Ms. Ames or any of his actions regarding her . . . or to the present lawsuit." (*Id.* at 139). Thus, a further deposition of Agent Yi, inquiring into an unsubstantiated allegation about how he may have improperly *accessed* information in an internal database, is not reasonably calculated to lead to information about how Agent Yi "willfully and intentionally" *disclosed* the Report to NGA.

At the hearing, Plaintiff's counsel argued that they do not have to accept Director Laferty's findings and should instead be allowed to depose Agent Yi to independently determine if he did something wrong regarding the EDS allegation. This would in essence create a trial within a trial; that is, Director Laferty will argue Agent Yi did nothing wrong, and Plaintiff will argue that he did something wrong. The answer to this question is irrelevant, though, because it

9

would not shed light on whether Agent Yi "willfully and intentionally" disclosed information to NGA in the instant case. Plaintiff is attempting "to explore matters which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc.*, 103 F.3d at 1012. This, however, falls outside the scope of discoverable material. *Id*.

## Conclusion

For the reasons set forth in this Memorandum Opinion, Plaintiff's Motion to Compel [47] is denied. An Order consistent with this Memorandum Opinion will be issued separately.

DATE: October 5, 2015                                /s/

                                                                    ALAN KAY
                                                                    UNITED STATES MAGISTRATE JUDGE